**WILLIAM SIMPSON CONST. CO. et al. v. WESTOVER, Collector of Internal Revenue, etc.**

No. 10402.

United States District Court
S. D. California, C. D.

June 22, 1951.

126

Arthur H. Deibert and Dempsey, Thayer, Deibert & Kumler, all of Los Angeles, Cal., for plaintiff.

Ernest A. Tolin, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Eugene Harpole and Frank W. Mahoney, Sp. Attys., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

Plaintiffs have brought suit seeking a refund of certain taxes allegedly illegally assessed and collected from them. The case presents the question of whether the plaintiffs under a contract with the United States Navy for the construction of a Naval Magazine, entered into on April 29, 1944, are liable for withholding taxes on wages, taxes under the Federal Insurance Contributions Act, 26 U.S.C.A. § 1400 et seq., and taxes under the Federal Unemployment Tax Act, 26 U.S.C.A. § 1600 et seq., with respect to the employees of the United Concrete Form Products Company, one of their many sub-contractors, for portions of the third and fourth quarters of the year 1944, or whether the United Concrete Form Products Company alone was obligated to pay the taxes.

Plaintiffs and the United Concrete Form Products Company entered into a sub-contract on May 12, 1944, for certain work to be done in conjunction with the prime contract. Before the contract was completed United Concrete Form Products Company ran into financial difficulties. Faced with this problem plaintiffs agreed to meet the labor and material claims of United Concrete Form Products Company as they fell due but only to the extent of the net amount due the laborers and materialmen. Plaintiffs set up a fund to pay the wages of the employees of United Concrete Form Products Company.

Defendant first assessed the taxes now in issue against the sub-contractor but failing in this he thereafter compelled the plaintiffs to pay said taxes.

It is defendant's contention that the laws affecting the withholding of income taxes, Social Security taxes, and the excise taxes on wages for Social Security and Unemployment taxes, are sufficiently broad to place the liability for withholding on the person who actually has control of the payment of wages, whether or not that person is the actual supervisor of the work of the employees.

Defendant contends in the alternative that where a prime contractor executes a payment bond binding himself to the United States promptly to make payment to all persons supplying labor and material in prosecution of the work provided for in the contract, that obligation extends to the taxes on wages of the employees.

Plaintiffs concede that the tax laws were intended to and do place the liability for such taxes upon the actual employer of the employees upon whose wages the taxes were imposed.

This brings us to the first question. Who was the actual employer? Defendant says that the evidence shows that the sub-contract was terminated and the plaintiffs thereby became the employers of the employees of United Concrete Form Products Company. This contention I find is untrue. The sums advanced to United

Concrete Form Products Company by the plaintiffs to meet the wage claims were monies earned by the sub-contractor. There is evidence that this type of arrangement is not unusual in the trade. The evidence in summary indicates that plaintiffs advanced sufficient funds to meet the wage claims as they became due in order to prevent disruption of the work. Since the taxes were not due as the wage claims fell due but rather were due at the end of the quarter, the plaintiffs relied upon the representations of United Concrete Form Products Company that it would be in a financial position to meet all outstanding obligations.

If United Concrete Form Products Company remained the employer the pertinent tax statutes have no applicability to plaintiffs.

■ Defendant next contends that if the contract was not terminated when the relationship between the plaintiffs and United Concrete Form Products Company was so altered that they became joint-venturers for the purpose of completing the sub-contract, or that plaintiffs from the time of the new arrangement were acting in a fiduciary capacity with regard to the paying of the wages of the employees of United Concrete Form Products Company, thereby becoming the actual employers within the meaning of the tax statute. With this contention I cannot agree. Assistance in financing does not of necessity turn the arrangement into a joint venture or establish a fiduciary relation between the parties.

■ Defendant also contends that the plaintiffs became liable for the taxes withheld from the wages of the employees of United Concrete Form Products Company by reason of their control of the payment of wages. Section 1621(d) (1) provides:

"(d) Employer. The term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

"(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employ-er' (except for the purposes of subsection (a)) means the person having control of the payment of such wages; * * *."

Under this Section one is deemed to be an employer by reason of his control of the payment of wages only if the person for whom the services are performed does not have control. Clearly this is not the situation shown by the evidence. The most that can be said for the defendant's position is that there is joint control, which I do not concede to be the case. Even in this case the statute does not apply. United Concrete Form Products Company did have control. It directed the manner in which the services were performed. It had the power to hire and fire. Plaintiffs supplied the money from which United Concrete Form Products Company paid the employees. So far as the individual employee was concerned his wages were dependent upon the amount of service he performed for United Concrete Form Products Company. Plaintiffs had control only in the sense that they paid United Concrete Form Products Company for work done. Once the money was put in the payroll account plaintiffs had no authority to prevent United Concrete Form Products Company from paying the wages to the employees. Plaintiffs' office manager had no power to withhold payment, even though he was empowered to sign payroll checks. Any work he did in this connection was done at the request of and for the convenience of the sub-contractor. Plaintiffs had no greater control over the payment of the wages after the August meeting than they had when the sub-contract was signed. The fact that the plaintiffs were the source of funds does not bring them within the meaning of Section 1621(d) (1).

■ Defendant's fourth defense is an equitable one based upon the payment bond executed by the plaintiffs for the protection of the laborers and the materialmen. Defendant urges that under the bond plaintiffs became obligated to pay the full amount of the wages of the employees of United Concrete Form Products Company, whether or not the plaintiffs were primarily liable for such wages. The full amount of an employee's wages are deemed to be

constructively paid when the net amount is paid.

It is not disputed that plaintiffs were obligated under the terms of the payment bond to pay the wages of all employees of the sub-contractor should he fail to do so. There is no dispute that the amounts withheld are part of the employees' wages for which the employer is liable.

 The application of the doctrine of equitable recoupment to the collection of taxes has been sparingly used, and in cases where there was no doubt as to the liability for the tax. Rothensies v. Electric Storage Battery Co. 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. Defendant's use of the doctrine here is not based upon the Internal Revenue Code but upon provisions of the Miller Act. 40 U.S.C.A. 270b. It is asserted that only the one year bar of the statute of limitations prevents the United States from suing on the bond in the event the plaintiffs were to receive a refund of any of the taxes. 40 U.S.C.A. 270b. But under the provisions of the bond the plaintiffs were not primarily liable but only after written notice required by the act was given. No liability could exist unless this notice was given within 90 days. United States for Use and Benefit of American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co., 8 Cir., 122 F.2d 600; United States for the Use and Benefit of John A. Denie's Sons Co. v. Bass, 6 Cir., 111 F.2d 965; United States for Use of Bruce Co., Inc., v. Fraser Const. Co., D.C., 87 F.Supp. 1. No cause of action having arisen there is nothing barred by the statute against which equitable recoupment may be asserted defensively.

The payment bond was given for the benefit of the laborers and materialmen specifically. It was not intended as a weapon to be used by the government in the collection of taxes. To so hold would be a perversion of its purpose.

 The liability for the taxes was that of the sub-contractor which the government recognized when it attempted to collect the taxes from it. When the defendant was not able to collect from the sub-contractor it then turned to the plaintiffs. Plaintiffs are not liable for the taxes of United Concrete Form Products Company.

The government contends that the conclusions I have arrived at permits the evasion of such taxes. There is no evidence of bad faith on the part of the plaintiffs. I believe the government has sufficient remedies available. If the prime contractors made a profit the same would be subject to the income tax laws. If the profit was excessive it would be subject to renegotiation under the Renegotiation Act, 50 U.S.C.A. Appendix, § 1191.

If it was the intention of Congress to hold a prime contractor liable for the taxes of the sub-contractor, it should have said so. If the government feels it is not sufficiently protected under the terms of its form of prime contracts, it can protect itself by so providing therein.

Plaintiffs are directed to submit proposed findings and judgment to me within fifteen days.