## CHRISTENSEN v. UNITED STATES et al.
### No. 130, Docket 22194.

United States Court of Appeals
Second Circuit.

Argued Dec. 13, 1951.

Decided Feb. 6, 1952.

---

3. Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467; Pekelis v. Trans. & Western Air, Inc., 2 Cir., 187 F.2d 122.

Nathan Baker, Hoboken, N. J. (Bernard Chazen, Hoboken, N. J., on the brief), for libelant-appellant.

Raymond Parmer, New York City (Myles J. Lane, U. S. Atty., Kirlin, Campbell & Keating, and Vernon Sims Jones, New York City, on the brief), for United States and War Shipping Administration, respondents-appellees.

Urban S. Mulvehill, New York City (Galli & Locker, New York City, on the brief), for Turner & Blanchard, Inc., respondent-impleaded-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Libelant is the non-dependent adult son and administrator of a longshoreman who was killed on November 12, 1945, while employed by Turner & Blanchard, Inc., the impleaded respondent, to work on a vessel owned by the United States and operated by the War Shipping Administration, the original respondents. He instituted the present action the next year as legal representative of the deceased.[1] The United States answered the libel and upon its motion Turner & Blanchard, Inc., was then impleaded. In answer to the petition filed by the United States against it, Turner & Blanchard, Inc., alleged payment of $1,000 into a special Treasury Fund pursuant to the order of the Deputy Commissioner of the Second Compensation District made up on determination that there was no person entitled to compensation under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 et seq., 944;[2] it therefore asked for dismissal of the libel and the petition as to it. Thereafter, on October 31, 1950, the United States moved for an order of dismissal of the libel. It contended that by virtue of the payment by the employer into the special fund pursuant to the Commissioner's order libelant no longer enjoyed the capacity to sue as legal representative of the deceased, since his right of action had been assigned to the employer by operation of 33 U.S.C.A. § 933(c).[3] The District Court agreed and entered a final decree dismissing the libel. From this decree libelant appeals.

■ The question is therefore a narrow one of interpretation of the statute. It is whether by force of § 933(c) the payment of $1,000 into the special fund operates as so complete and effective an assignment of a

1. Joining with Delia Gill, the widow and administratrix of another longshoreman killed in the same accident, whose libel was subsequently severed and went on to decree for libelant, affirmed in Gill v. United States, 2 Cir., 184 F.2d 49.

2. "§ 944. *Special fund.* (a) There is established in the Treasury of the United States a special fund for the purpose of making payments in accordance with the provisions of subsections (f) and (g) of section 908 of this title. * * *

"(c) Payments into such fund shall be made as follows:

"(1) Each employer shall pay $1,000 as compensation for the death of an employee of such employer resulting from injury where the deputy commissioner determines that there is no person entitled under this chapter to compensation for such death. * * *"

Subsec. (f) of § 908 provides for payment from the fund to make up the difference where an employer is liable only for a later injury where two injuries combine to cause a permanent total disability. Subsec. (g) provides for payment from the fund for the maintenance of employees undergoing vocational rehabilitation.

3. "§ 933. *Compensation for injuries where third persons are liable.* (a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person.

"(c) The payment of such compensation into the fund established in section 944 of this chapter shall operate as an assignment to the employer of all right of the legal representative of the deceased (hereinafter referred to as 'representative') to recover damages against such third person, whether or not the representative has notified the deputy commissioner of his election.

"(d) Such employer on account of such assignment may either institute proceedings for the recovery of such damages or may compromise with such third person either without or after instituting such proceeding. * * *"

right of action for wrongful death accruing to a legal representative under a state statute that nothing remains for the representative to pursue. Two decisions have so held. Moore v. Christiensen S. S. Co., 5 Cir., 53 F.2d 299, and Adreance v. Lorentzen, Sup., 60 N.Y.S.2d 834. Other cases have so intimated. Doleman v. Levine, 295 U.S. 221, 228, 55 S.Ct. 741, 79 L.Ed. 1402; Chapman v. Griffith Consumers Co., 71 App. D.C. 64, 107 F.2d 263; Terminal Shipping Co. v. Branham, D.C.Md., 47 F.Supp. 561, affirmed Branham v. Terminal Shipping Co., 4 Cir., 136 F.2d 655. We agree.

The statutory language and intent seem reasonably clear. Following state models, notably that of New York, the Act provides for payments to an injured longshoreman and to the dependents of one killed without respect to fault; but it preserves whatever rights may exist against third-party tort-feasors, allowing claimants under the Act an election between such suit and the compensation provided, but giving the right thus to seek reimbursement to any employer upon his paying compensation. In that event any amounts recovered in excess of his expenditures go to the person entitled to compensation or to his representative. 33 U.S.C.A. § 933(e) (2). But where in the event of death there are no dependents payment of a fixed sum into a fund for the permanently disabled by successive accidents or those undergoing vocational rehabilitation is required instead, with like assignment of the right of action to ensure the employer's reimbursement. There is perhaps a slight ambiguity in that the Act first defines "compensation" as the "money allowance payable to an employee or to his dependents as provided for in this chapter," 33 U.S.C.A. § 902(12), but twice later in both §§ 933(c) and 944(c) (1) the payment into the fund for death is referred to as "compensation." Hence when the statute provides that the payment of "such compensation into the fund" shall operate "as an assignment to the employer of all right of the legal representative of the deceased * * * to recover damages against such third person," § 933(c),[4] it quite literally takes away all right from li-belant and vests it in the employer, who thereafter controls it under § 933(d). And since the employer joined with respondent in asking dismissal below and affirmance of the dismissal here, libelant has no ground of objection on this appeal.

Libelant, however, contends that Congress could not have had such an intent, particularly because it thus leads to absurd and unjust results. He cites Seas Shipping Co. v. Sieracki, 328 U.S. 85, 102, 66 S.Ct. 872, 881, 90 L.Ed. 1009, to the effect that while Congress did intend the remedy of compensation to be exclusive as against the employer, it did not intend "this remedy to nullify or affect others against third persons." But as the Court stated, it was acting upon explicit provisions of the Act itself to preserve the *right of the longshoreman* himself against third persons. It had nothing to do with the case of a statutory assignment provided for on death of the longshoreman and lack of any dependents. Here, as Justice Stone had pointed out in Doleman v. Levine, 295 U.S. 221, 228, 55 S.Ct. 741, 79 L.Ed. 1402, on payment of $1,000 by the employer into the special fund, the right of the legal representative is by the statute assigned to the employer. No case holds otherwise.

Nor do we think there is made any such showing of absurdity or injustice as to suppose or require a contrary legislative intent. Libelant objects to control of the ultimate course of litigation against the third person by the employer, who has an interest, opposed to that of the legal representative, to get a comparatively small reimbursement quickly rather than a delayed greater recovery. But Congress obviously had to make a choice whether primarily to protect the employer's claim to reimbursement or the representative's claim to varying and—under a few statutes—possibly heavy damages. That it chose the former, in line with its general treatment of claims against third persons in the entire section, was well within the area of its reasonable discretion. The contention that this is an unconstitutional delegation of legislative power by making choice of recovery

4. Quoted note 3 supra.

"subject to the whim and caprice of the employer" is surely fanciful. The further suggestion that this may make unreasonable discriminations between rights of recovery vested by state law in the legal representatives and those vested directly in named relatives not necessarily dependents likewise touches upon a matter of legislative discretion. In view of the diversity among death damage statutes in this country, Congress would have had difficulty in devising a single and non-confusing formula treating all quite alike. Had it intended some distinction among suits by representatives, it would undoubtedly have said so; but in that event it would presumably have singled out for discriminatorily unfair restriction such rights of action as those created in Connecticut, for example, which are in legal form for the benefit of the estate only, though distribution is eventually made to next of kin after paying costs and administration expenses. Selection of the case of a right in the *representative* for operation of the legal transfer has the merit of definiteness and simplicity, as well as of equal fairness with other suggested compromises. Hence the statutory language must be held to operate according to its natural intent.

We do not think a court is justified in rewriting the legislation so as to divide up the precisely described "all right," which is transferred to the employer under § 933(c), into two separate rights, diversely treated and separately enforced against a third person (whether he assents to this increased burden or not), while incidentally repealing or restricting the broad power to compromise conferred on the employer by § 933(d). However desirable such rewriting might seem from the standpoint of non-dependent relatives, favorably protected in certain accommodating states, such relatives, unlike dependents of the deceased, do not seem to have been an object of Congressional solicitude. When further it is borne in mind that the new provision would operate diversely as differing state laws govern—thus being inapplicable to those rights of action which are viewed as belonging to the deceased and continued only for his estate—the resulting diversity and confusion suggests that the power of framing better legislation "is with Congress, not us." Pillsbury v. United Engineering Co., 1952, 72 S.Ct. 223, 225.

Libelant's additional contentions may be shortly stated. He attacks the Deputy Commissioner's determination that no one was entitled to compensation as having been made without notice or hearing. He had made no request for a hearing which is to be granted "upon application of any interested party." 33 U.S.C.A. § 919 (c). Moreover and in any event there is no dispute that the determination was correct on the facts. Hence libelant has not been injured, and there is no denial of due process under the Fifth Amendment or violation of the procedural requirements of § 919. Nor does the outright dismissal ordered by the court below conflict with Admiralty Rule XVIII of the Southern District of New York providing for joinder in case of "changes of interest in the suit." Non-dependents have no real interest in the suit. Moore v. Christiensen S. S. Co., supra, 5 Cir., 53 F.2d 299. Any other result would destroy the right of the employer to compromise provided by § 933(d). And any supposed laches of respondent in moving to dismiss has thus not injured the libelant.

Affirmed.

FRANK, Circuit Judge (dissenting).

My colleagues, as I understand them, have interpreted the Longshoremen's and Harbor Workers' Compensation Act to mean this:

An employee subject to the Act is killed on the job but leaves no dependent relatives behind who are eligible for compensation. The employer is required to pay instead $1,000 into a statutory fund. In return, he receives the unfettered right to sue, settle or bury all claims of the seaman, his estate, or any of his relatives against a third-party responsible for the death. The estate and the relatives are stymied. They cannot themselves prosecute any suits against the third party in any court, state or federal, under any statute, state or federal. The employer takes over all such rights against the third party. Presumably, the assignment is to give the

employer some indemnity for his $1,000 payment.

To be sure, anything he recovers over that $1,000, he must return to the estate or the relatives. This fact, however, remains: Most employers are fully insured for any compensation they pay out; practically speaking, neither the employer nor his insurer (because of the paucity of the $1,000 contribution) will undertake an expensive, time-consuming, worrisome lawsuit to recover $1,000. If they do anything at all, more likely it will be to compromise the third-party claim for a sum sufficient to indemnify themselves but not to compensate anyone else. The employer or his insurer will often refuse, for business, financial, or public-relations reasons, to allow the relatives' suits to be prosecuted in the employer's name.

I find it hard to believe that Congress meant so relentlessly to sacrifice the employee's family to the employer who makes a $1,000 contribution to a fund from which the family can gain nothing. There is not one word of congressional history—reports, hearings or debates—to compel such a conclusion. Only the literal language of the statute can be invoked to sanction such a result. I agree with Judge Learned Hand and other judges who have resisted what a wag might call the lexicographic logic of the literal language litany. I agree with Judge Hand's remarks in Federal Deposit Insurance Co. v. Tremaine, 2 Cir., 133 F.2d 827, 830. "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words do not formally quite match with it." It is, he said in Cabell v. Markham, 2 Cir., 148 F.2d 737, 739, "one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

That view is particularly pertinent here. For, in Doleman v. Levine, 295 U.S. 221, 229, 55 S.Ct. 741, 745, 79 L.Ed. 1402, the Supreme Court, recognizing the scissors-and-paste character of the Act we are here interpreting, said that "it seems beyond the resources of judicial ingenuity to construe the statute so as to give it a wholly consistent and harmonious operation". And the other day, interpreting a statute similarly composed, the Court said: "Instead of a carefully matured enactment, the legislation was a makeshift patchwork. Such legislation strongly counsels against literalness of application. It favors a wise latitude of construction in enforcing its purposes." Guessefeldt v. McGrath, U.S., 72 S.Ct. 338, 344.

Accordingly, I suggest an interpretation of § 33(c) which, I think, (1) fits in better with the Supreme Court's liberal interpretation of employees' rights under § 33(a), and relatives' rights under § 33(b), see Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Doleman v. Levine, 295 U.S. 221, 55 S.Ct. 741, 79 L.Ed. 1402, and (2) avoids two major incongruities in the Act's treatment of relatives as my colleagues construe it. Under my interpretation, the employer would obtain an assignment of no more than the legal representatives' wholly equitable interest (if any) in a claim against the third party. The employer would obtain no assignment where, pursuant to the applicable state statute, the legal representative, although the sole person authorized to bring the suit against the third person, does so merely as a "statutory trustee," or nominal plaintiff, with the proceeds of the suit all going to relatives of the deceased. My interpretation stems from a consideration of the following:

In the majority of the states providing for wrongful-death actions, the suit is brought by an administrator; in about a dozen states, the beneficiaries of the action may sue in their own names. See Death, 16 Am.Jur. § 263. As this court has said, the administrator in the first group of states is "merely a nominal plaintiff," and the "real parties in interest are the beneficiaries whom he represents." Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 359, 162 A.L.R. 318. In that case, the question was whether an administrator acting under the

Kentucky statute could maintain suit in New York. We said: "If those beneficiaries had been permitted to and had brought suit in their own names, unquestionably their actions would not have been ousted. To reach a different conclusion because the nominal plaintiff is a representative appointed by a court of another state would be to rest judgment, irrationally, on the sheerest verbalism. We have too much respect for the New York Court of Appeals to believe that it would do so."[1]

My colleagues, however, come very close to doing just that. They treat differently (a) relatives who can sue in their own names and (b) relatives who must bring suit through a statutory trustee, although in both instances the relatives have exactly the same equitable interest in and expectation of recovery, i. e., the same "right to recover." Where the suit must be in the administrator's name, the relatives can, if necessary, compel him to bring the action. Yet my colleagues hold that, merely because it is brought in an administrator's name and not in the relatives' names, therefore, under § 33(c) they lose to the employer their rights to recover. I cannot attribute to Congress such a capricious distinction with such drastic results as follow, for example, in the instant case. To repeat, I think that, reasonably interpreted, § 33(c) assigns to the employer control over only those rights to recover on behalf of the estate which normally belong, both legally and equitably, to the employee's executor or administrator. See Cooper v. American Airlines, supra, 149 F.2d 355, 358.[2]

The solicitude of the Supreme Court for relatives' rights under § 33(b) highlights the shabbiness of their treatment under my colleagues' interpretation of § 33(c). See Doleman v. Levine, 295 U.S. 221, 55 S.Ct. 741, 79 L.Ed. 1402. There the Court decided that when an employee leaves (1) relatives who are eligible and elect to take compensation under the Act and (2) relatives who are either not eligible or do not elect to take compensation, § 33(b), which assigns to the employer "all right of the person entitled to compensation", gives him only the "share [of the relatives actually compensated] in the proceeds of recovery and, if necessary, by appropriate proceedings [the right to] compel the administrator to bring the suit and account for its proceeds." The employer acquires no right to control the litigation altogether, even if all the relatives entitled to take compensation choose to do so. For, reasoned the Court, "There may be next of kin of the decedent entitled to share in the recovery for wrongful death who are not entitled to compensation, and others who elect, as provided in section 33(a) to take their share of the recovery for wrongful death instead of compensation. A construction of section 33 which would require the use of their shares to indemnify the employer, for payments to others who have elected to receive compensation, is not to be favored in the absence of language plainly requiring it."[3] Incidentally, in the same

1. We were right about the New York Court of Appeals. See its subsequent ruling, following Cooper v. American Airlines, in Wiener v. Specific Pharmaceuticals, Inc., 298 N.Y. 346, 83 N.E.2d 673.
New Jersey is one of the states where the suit must be brought by an administrator as statutory trustee. N.J.S.A. 2:47–2. Cooper v. American Airlines, supra, note 8. Like most states, New Jersey does not require a showing of dependency for recovery—only pecuniary loss. Thus the adult son might have recovered here. Demarest v. Little, 47 N. J.L. 28.

2. There is an additional small group of states which require the administrator to bring suit in behalf of the estate, but which render the proceeds of such suit inaccessible to creditors, and distributable in specified portions to stated beneficiaries. Obviously, in those cases, the estate, like the administrator, is a mere conduit for the real beneficiaries. I would therefore treat relatives in those states exactly like relatives who can sue in their own names or share directly in the proceeds of a suit brought in the administrator's name. See Death, 16 Am. Jur. § 249.

3. Indeed, if the literal language rule had been followed in construing § 33(b), the employer would receive nothing as a result of the assignment to him of "all right" to "recover damages" from the compensated relative. For if, as my colleagues believe, "right to recover" means

case, the Court found no difficulty in what my colleagues call "restricting the broad power to compromise conferred on the employer by § 933(d)" to meet the equities of the situation. The Court said: "Section 33(d) authorizes the employer, 'on account of such assignment,' to compromise the claim for damages or to institute proceedings upon it. Its provisions are permissive only * * * in a case like the present, where the right assigned to the employer is to receive a part only of the proceeds of recovery for the wrongful death, the language falls short of conferring upon him authority to compromise or sue upon claims which 'such assignment' does not operate to transfer."

We have then the following anomaly: A longshoreman dies, leaving both dependent and non-dependent relatives. The non-dependent relatives preserve their rights to sue, no matter what the dependent relatives do or how much the employer pays them. If another longshoreman dies, leaving only non-dependent relatives, then, if my colleagues are correct, those relatives lose all their rights to sue, because of the employer's payment of $1,000. I submit that this interpretation needlessly attributes a perversity, an irrationality, to legislators intent upon providing liberal compensation to employees injured in the line of duty and to their families. Under my suggested interpretation, no such distinction would be drawn: Whenever, by a state statute, relatives have the exclusive right to recover all or a specific portion of the proceeds of a wrongful death action, whether brought in their own name or through an administrator, then, regardless of the existence or non-existence of dependent relatives, the federal statute does not destroy that right. So, here, I would deny the motion to dismiss, and allow the employee's son to bring suit for his father's death.

"right to bring suit," then the relative had no such right where the action had to be prosecuted jointly with other relatives and in the administrator's name.

True, there is language in Doleman v.

Levine which supports my colleagues' interpretation of § 33(c). But that language is obiter, for there the Court did not have before it a case involving § 33(c).