POMPER v. UNITED STATES.

No. 194, Docket 22261.

United States Court of Appeals
Second Circuit.

Argued March 12, 1952.

Decided March 28, 1952.

Clark, Circuit Judge, dissented.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

Louis P. Rosenberg, Brooklyn, N. Y., for trustee.

Ellis N. Slack, Acting Asst. Atty. Gen., (A. F. Prescott and S. Dee Hanson, Washington, D. C., of counsel), and Frank J. Parker, U. S. Atty., Brooklyn, N. Y. (Nathan Borock, Brooklyn, N. Y., of counsel), for the United States.

FRANK, Circuit Judge.

In rejecting the claims for priority, the Referee recognized that obligations incurred by a debtor-in-possession—in carrying on the business, whether for wages, goods, or taxes—are normally entitled to first priority as legitimate expenses of administration within the meaning of Section 64, sub. a(1). 11 U.S.C.A. § 104, sub. a(1). Thus, there are many decisions holding that state franchise taxes on the privilege of doing business accruing during bankruptcy proceedings are administrative expenses. In re Thornycroft, Inc., 2 Cir. 120 F.2d 469; In re Fonda, 2 Cir., 126 F. 2d 604; Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 515, 76 L.Ed. 1136. These cases have generally relied on two characteristics of the state franchise tax in holding the entire annual tax payable as an administrative expense, although the company was in bankruptcy during only part of the taxable year: (1) Payment of the franchise tax was usually essential to the continuation of the debtor in business so that it might carry on after reorganization. In re Thornycroft, Inc., supra. Nonpayment in such cases might have brought about forfeiture of the franchise, and had to be avoided at all costs. So the Supreme Court, in the Michigan Trust Company case, allowed as administrative expenses franchise taxes already due and owing when the receiver took over, because they were taxes "of such an order that the corporation by failing to pay them became subject, if the state so elected, to a forfeiture of its franchise." (2) The state franchise taxes were generally based, in whole or in part, upon the "amount of capital stock within the state" or "paid up capital and surplus"—in other words, upon bases that could not be reasonably apportioned over the taxable period. See also People of State of New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405.

The federal unemployment tax here concerned is distinguishable from such state franchise taxes in both respects. It is certainly not a franchise tax on the privilege of doing business. Were we to decide by the name-calling process, we would be compelled by the statute to call it an excise tax. Section 1600 provides: "Every employer shall pay for the calendar year * * an excise tax, with respect to having individuals in his employ, equal to 3 per centum of the total wages paid by him during the calendar year with respect to employment". It may be worth mentioning, in this connection, that the Michigan Trust case carefully excluded from its holding "a federal tax imposed as an excise on the actual doing of business and to be measured by its fruits." Cardozo, J., emphasized there that "The tax in controversy is a state tax, and

is laid not on the doing of business, but on the mere privilege to do it."

Labels aside, however, the federal unemployment tax differs from state franchise taxes in a more important way. As the district judge here pointed out, "the amount of the tax for any specific period is computable by simple arithmetic."[100 F.Supp. 125.] The employer's tax at any given time in the taxable period can be accurately computed through multiplying by three one-hundredths the aggregate wages paid to employees up to that time. The mere fact that the tax is not due until the year's end does not detract from the fact that it is incurred in a readily ascertainable amount as the wages are paid out. Indeed, if the employer sells out his business to a new employer at any point in the year, he will still be responsible for the tax of 3% on all wages paid out by him before the sale, while his successor employer will be responsible for a 3% tax on the remaining payroll (provided, in the case of both the old and the new employer the period of their ownership covers twenty weeks—the minimum work-week total for any tax on an employer). S.S.T. 199, 1937 Cum.Bull.–2 405.[1] Such a flexibility in computing and dividing the annual payroll tax when the business changes hands (not to be found in the area of state franchise taxes. See e. g.,

People of State of New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405.) is not compatible with the United States' contention that, because the tax is imposed for a "taxable year" or "calendar year," it is an inherently un-split-up-able unit.

Since, then, the annual tax can be easily apportioned between pre-bankruptcy and post-bankruptcy wages, and since we can find no policy of the tax statute disturbed by such apportionment, we think the unemployment tax must be treated the same as other regular business expenses of the debtor continuing throughout and apportionable between the pre-bankruptcy and post-bankruptcy periods of the year. See In re Wil-Low Cafeteria, Inc., 2 Cir., 111 F.2d 83. The Referee was, we think, justified in denying priority to unemployment taxes levied on wages paid out before the Chapter XI petition was filed.[2]

Affirmed.

CLARK, Circuit Judge (dissenting).

At first blush it may seem unnatural to view as a single unit assessment a tax for an unemployment fund assessed against employers on the basis of wages paid during the course of a year. I fear that the various tribunals which have decided against the government in this proceeding have taken that initial reaction as a guiding

1. In a Treasury opinion, it has been said (S.S.T. 151, 1937—Cum.Bull.–1 464) that a corporation in bankruptcy reorganization is not a new owner (or new employer) in this respect, i.e., wages payable for the period of operation by the trustee should be included in determining tax liability for the year irrespective of the fact that the period of operation by the trustee was less than 20 weeks. Arguendo, we assume the correctness of that opinion. But cf. Helvering v. New York Trust Co., 292 U.S. 455, 467–468, 54 S.Ct. 806, 78 L.Ed. 1361. That assumption, however, does not mean that the estate in bankruptcy must be charged with the entire tax as an administrative expense. Rather the tax should be treated like the wages themselves which form the basis for the tax: Certain pre-bankruptcy wages receive a priority under Section 64, sub. a(2) of the Bankruptcy Act, while post-bankruptcy wages receive Section 64, sub. a(1) priority as administrative expenses.

Still another practical factor fights with treatment of the tax as an indivisible unit: Up to 90% of the federal tax can be, and usually is, offset by contributions to state unemployment compensation funds. These contributions under the various state laws, are often made at regular intervals during the year on the basis of wages paid out up to those dates. Thus, practically speaking, the taxpayer is really paying off his federal tax throughout the year. People of State of New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405. See, e.g., In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45 (C.A. 3).

2. We are mindful of at least one district court decision, Matter of Demos Cafe, Inc., 5 CCH 1951 Fed.Tax Rep., par. 9223 (W.D.Mich.) which holds the contrary; but, like the Referee, we are "not persuaded."

principle of interpretation to set aside a manifest legislative intent. For I can find nothing other than this feeling that the governmental contention cannot, i. e., ought not to, be so to support the result. There are no authorities that way;[1] and the statutory language seems strongly contra. The several sections, I.R.C. §§ 1600–1611,. are too long to quote in full. They seem clear in the provision for an "excise tax" on the employer "for each calendar year" of 3 per centum of the total wages "paid by him during the calendar year," § 1600, computed according to a return filed by the employer "for such taxable year" not later than January 31 "next following the close of the taxable year," § 1604, and payable in a single amount or, if the taxpayer so elects, in four equal installments, with the whole due if any installment remains unpaid on the last day for its payment, § 1605. And all the other provisions carry out this idea of a tax for the year computed and paid as a whole after the year has closed. Repeatedly stressed are either the "calendar year" or the "taxable year."

In fact, some provisions seem or tend to be unworkable on the theory of a tax accruing from day to day. Thus the credits allowed under § 1601 for payments to a state unemployment fund are pointedly "for contributions paid on or before the last day upon which the taxpayer is required under section 1604 to file a return for such year," with a special provision covering later payments in part; the intent to pick up all such amounts in the single return at the year's end, depending on the the fact that a federal tax has then become due, seems obvious. Likewise the provision for computing the maximum wage of $3,000 beyond which no tax is due, § 1607 (b) (1), concerns itself expressly with the amount paid an individual during a "calendar year," and does not contemplate the possibility of prorated payments over a portion thereof. Other like provisions are cited; and there is no suggestion anywhere of the unreal idea—viewing any business—

that the employer becomes a new and different person, destroying the unitary character of this assessment, by the mere chance of filing a petition for arrangement. Incidentally the departmental ruling has been to the contrary, S.S.T. 151, 1937—1 Cum. Bull. 464; S.S.T. 199, 1937—2 Cum.Bull. 405, a point which should be of weight, particularly in the light of successive reenactments of the taxing statute.

We are not at liberty to rewrite a statute because we do not like its terms. Christensen v. United States, 2 Cir., 194 F.2d 978. But on close thought the policy does not seem unfair. Here is a business still going and required to pay as a primary charge along with wages a tax thereon for the unemployed. To include in this limited tax with a specified ceiling per employee the total for the year as required to be assessed and paid by the statute, without refinements of confusing changes, does not seem unduly harsh. I would reverse.

---

1. The only authorities, two lower court decisions, are in accord with the views expressed in this dissent. Matter of Demos Cafe, Inc., 1950, D.C.W.D.Mich., 5

CCH 1951 Fed.Tax Rep. ¶9,223; Matter of Amoskeag Mfg. Co., D.C.Mass., 34 Am. B.R.,N.S., 469.