**VORIS v. EIKEL et al.**

No. 13953.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1952.

Rives, Circuit Judge, dissented.

W. G. Winters, Jr., Asst. U. S. Atty., and Brian S. Odem, U. S. Atty., Houston, Tex., for appellant.

E. D. Vickery and John R. Brown, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by the Southern Stevedoring & Contracting Company, a partnership composed of Charles Eikel and B. D. Harris, employing stevedores, and their insurance carrier, the suit was to enjoin enforcement of an award of compensation under the Longshoremen's and Harbor Workers' Act, Title 33 U.S.C.A. § 901, et seq., entered by the defendant Deputy Commissioner on November 29, 1950, and supplemented and amended by an order of the Deputy Commissioner on March 14, 1951.

The claim was that the award was invalid because the provisions of Sec. 12 [1] of the Longshoremen's Act, 33 U.S.C.A. § 912, had

---

1. Sec. 12 of the Longshoremen's Act, 33 U.S.C.A. § 912 provides as follows:

"(a) Notice of an injury or death in respect of which compensation is payable under this Act shall be given within thirty days after the date of such injury or death (1) to the deputy commissioner in the compensation district in which such injury occurred and (2) to the employer.

"(b) Such notice shall be in writing, shall contain the name and address of the employee and a statement of the time, place, nature, and cause of the injury or death, and shall be signed by the employee or by some person on his behalf, or in case of death, by any person claiming to be entitled to compensation for such death or by a person on his behalf.

"(c) Notice shall be given to the deputy commissioner by delivering it to him or sending it by mail addressed to his office, and to the employer by delivering it to him or by sending it by mail addressed to him at his last known place of business. If the employer is a partnership, such notice may be given to any partner, or if a corporation, such notice may be given to any agent or officer thereof upon whom legal process may be served or who is in charge of the business in the place where the injury occurred.

"(d) Failure to give such notice shall not bar any claim under this act (1) if

not been complied with, and the claim was barred.

The respondent, the deputy commissioner, admitting that the written notice required by the act had not been given, but invoking Subdivision (d) of the section, defended on the ground that the evidence showed, and he, as commissioner had found, under (d) (1), "that the agent of the employer in charge of the business in the place where the injury occurred had knowledge of the injury and that the employer had not been prejudiced by failure to give written notice"; and also had found "that failure of the employee to give notice in writing as provided by Sec. 12(b) is hereby excused for the following reasons." [2]

The district judge filed findings of fact and conclusions of law in opinion [3] form, finding and holding that the record did not support the commissioner's order, and gave judgment setting aside the compensation order and enjoining the defendant deputy commissioner and the claimant from enforcing it.

Appealing from the judgment, the commissioner is here insisting: that the evidence in the record considered as a whole supports his finding that the employer had knowledge of the injury or the alternative finding that for some satisfactory reason notice could not have been given; and that either finding would support the order. So insisting, he urges upon us that the judgment must be reversed.

We do not think so. In agreement, as we are, with the views of the district judge as announced in his opinion, we shall not unduly extend this opinion. In complete agreement with his view that a liberal and reasonable construction of the act is one thing and that reading language into it which it does not contain or giving effect to it which its langauge does not permit is quite another, we cite, in support, Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223; Christensen v. United States, 2 Cir., 194 F.2d 978.

We are, too, in full agreement with his view: that congress having provided "Failure to give such notice shall not bar any claim under this act (1) if the employer (or his agent in charge of the business in the place where the injury occurred) * * * had knowledge of the injury * * *", the act means just what it says,

the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death."

2. These were: "That claimant reported the injury verbally to the employer's foreman in charge of the gang in which claimant was working at the time of injury, immediately following the injury; that said notice was repeated the next day; that claimant is an illiterate man, testifying that he is unable to read and only writes his name with difficulty; that he was not a regular longshoreman and had only worked as a longshoreman one night prior to the date of his injury, and was not acquainted with the requirements as to reporting an injury; that he was not

given any instructions as to whom he should report an injury; that his immediate foreman was the only representative of the employer known to him, and that said foreman testified that he had reported the injury to the timekeeper of the employer; that it is shown by the testimony of several fellow-workers that claimant was complaining of injury at the time said injury occurred and that his injury was generally known to these fellow-employees following a hurried exit from the ship due to a flash fire; that the timekeeper has testified that he immediately visited the scene of the accident, and could easily have inquired as to injuries among the gang of longshoremen but disclaims knowledge of this injury at the time; that claimant's verbal report of injury to his immediate foreman constitutes the usual method of reporting such injuries, and that it is clearly due to the negligence of agents of the employer that said injury was not reported and claimant furnished with medical treatment at the time the injury occurred."

3. Eikel v. Voris, D.C., 101 F.Supp. 963, 964.

and that, to be effective, knowledge must be brought home to the owner or to his agent in charge of the business,—in this case David,—and nothing less will suffice.

■ It is perfectly clear to us, as it was to the district judge, that the carefully drawn language of the act is not satisfied by the showing, accepted by the deputy commissioner as sufficient, that Wisby had knowledge of the injury. He was in no sense the agent or representative in charge, for the stevedores, of the work of unloading the ship. He was not even a regular employee of theirs. An official of the union at the hiring hall and its representative in connection with this job, he had no connection with the stevedores except the casual one of gang pusher or walking foreman on this particular job.

■■ Finally, we agree fully with the district judge that the statute, providing as an alternative to knowledge of the owner or his agent in charge that if the deputy commissioner excuses the failure to give notice "on the ground that for some satisfactory reason such notice could not be given" the "Failure to give such notice shall not bar any claim", did not invest the commissioner with unlimited and unguided power to excuse or refuse to excuse. On the contrary, it set up a standard conformable to right reason to which, considering the primary purpose of Sec. 12 of the act in requiring prompt notice and presentation of claim, the reasons put forward by the deputy commissioner as satisfactory must reasonably conform.

The reasons given by the deputy commissioner as satisfactory reasons why such notice could not have been given in this case are not, under the statute, reasons at all. They are mere excuses on grounds which the statute does not define as excuses. If accepted in this and similar cases, they would largely nullify Sec. 12, making it unnecessary *to file a written notice or to bring home knowledge to the employer or his agent in charge*, or for the deputy commissioner to furnish satisfactory reasons for excusing the failure to give notice. They would do this by writing into the statute exceptions from its provisions in favor of employees who: (1) were illiterate; (2) were not regular longshoremen; (3) had worked only a short time; (4) were not acquainted with the requirements about reporting; (5) had reported to their immediate gang pusher; and (6) might fall into any other categories which the deputy commissioner would from time to time invent or devise in further nullification of the statute. In short, the acceptance of these and similar reasons put forward by a deputy commissioner as satisfactory would rewrite the statute to give the deputy commissioner arbitrary power according to his whim or caprice to excuse or refuse to excuse.

We are sure that the congress had no intention to clothe the deputy commissioner with such power. In the absence of language compelling such a construction, no court would be justified in imputing such an intention to the Congress. In the presence of language such as this statute contains, we think no court could fairly impute such intention to the congress or properly give the statute such effect.

■ While, of course, the decisions of the Texas courts under the somewhat analogous provision in the Texas Workmen's Compensation Act, excusing for "good cause" the failure to file claim within six months, are not authoritative, they are persuasive. Though the words "good cause" are not otherwise defined in the statute, the Courts of Texas have assigned to these words a clear and regular meaning. Under their authoritative decisions,[4] it is the settled law of Texas that the "good cause" contemplated by the statute means such cause as would be considered a reasonable excuse for not filing the *claim by a man of ordinary prudence who is reasonably mindful of his own interests*. Ordinarily the existence of good cause is a question of fact to be determined by the jury, but where the undisputed evidence reflects a state of facts about which the minds of reasonable men cannot differ, it is a question of law.

The judgment was right. It is

Affirmed.

4. Hawkins v. Safety Cas. Co., 146 Tex. 381, 207 S.W.2d 370; American Motorists v. Boortz, 5 Cir., 197 F.2d 900 and cases cited.

728

RIVES, Circuit Judge (dissenting).

Leslie Lovely, the gang foreman, and Ernest Wisby, the walking foreman, each testified that he had actual knowledge of the claimant's injury on the night that it occurred. Irrespective of the manner and duration of their employment, both Lovely and Wisby were then employees of the Southern Stevedoring & Contracting Company, and it was responsible for their acts and omissions within the scope of their employment the same as if they had been selected without the aid of a union and their duties were to extend over years. Wisby was the man who hired Earl Porter, the claimant. He was in charge of the gang of longshoremen, directed them in their work and exercised general supervision over them. He was the person who paid off the men for the employer and was the only representative of the employer known to the claimant.

Wisby testified:

"Q. What are your instructions about reporting injuries? Don't they report to their immediate foreman first? A. They report to the immediate foreman; tell me and I inform them to get hold of the doctor. But on this job, I didn't. I was filling in there as walking foreman at night, as assistant, I guess. I don't know who was over me. I think Harrison was supposed to be walking that ship; I think he was. Another boy was over him.

"Q. Who was over you? A. I don't know his name.

"Q. As a matter of general practice, don't the men report to the immediate foreman? A. Yes, immediate foreman and foreman in turn.

"Q. You leave it to the men to go find the timekeeper, find their way around? A. I reported it to the timekeeper myself, and told him Earl got hurt.

"Q. Who is the timekeeper? A. Mr. Tarpey.

"Q. Is that R. J. Tarpey? A. Yes, that's right. I report to him and he in turn is the man supposed to have the slip to go to the doctor. Because I wouldn't know what doctor to send them to."

Tarpey, the timekeeper, denied that Wisby reported the claimant's injury to him, but further testified that it was Wisby's duty so to do: "Q. And he is supposed to report these injuries to you or Mr. David or somebody in charge of him, does he? A. Yes, sir."

Mr. David, the man conceded by the employer to be its agent in charge of unloading the ship, testified: "Q. Does the walking foreman in the position Wisby occupied, does he have instructions to tell you about any injuries? A. That is the regular procedure."

Mr. Harris, one of the employer partners, testified: "Q. If Wisby had notice of an injury, wouldn't it be part of his duty to tell Mr. Tarpey or Mr. David? A. Yes, sir. * * *."

When the undisputed evidence establishes both that knowledge of the claimant's injury was brought home to the foreman, and that it was the foreman's duty to report it to his employer, it is clear to my mind that the consequences of the failure of the foreman to perform his duty should be visited on the employer, not on the claimant.

In Merritt v. American Stevedores, 195 A. 382, 385, 15 N.J.Misc. 710, the court held that:

the knowledge of the foreman under whose direct and immediate supervision the employee worked from day to day must be regarded as the imputed knowledge of the employer; that, under the compensation act, "humanely conceived for the benefit of the more or less uneducated laborer," he cannot be held "to a greater burden than to bring home knowledge to the person with whom he is accustomed to deal in the corporation's behalf."

In Fear-Campbell Co. v. Yearion, 88 Ind. App. 382, 164 N.E. 282, 284, the court said:

"A workman had received an injury by accident, arising out of and in the course of his employment, and his foreman had knowledge of these facts and should have reported the same to his superiors. His failure so to do cannot be charged against the appellee."

The two cases just cited are typical of hundreds which might be collected. 58 Am.Jur., Workmen's Comp., Sec. 385, p. 832; 71 C.J. 993, Workmen's Compensation Acts, Sec. 771; Annotations 78 A.L.R. 1258, 92 A.L.R. 515, 516; 107 A.L.R. 823; 145 A.L.R. 1293, 1296; L.R.A.1918E, 561, 564; Ann.Cas.1917D, 874.

It has been pointed out that the Federal Longshoremen's and Harbor Workers' Compensation Act was patterned largely upon the New York Workmen's Compensation Law. Terminal Shipping Co. v. Branham, D.C., 47 F.Supp. 561, affirmed 4 Cir., 136 F.2d 655; Case v. Pillsbury, D.C., 52 F.Supp. 882, affirmed 9 Cir., 148 F.2d 392.[1] The notice requirements are similar though the New York Act is more explicit. See Sec. 18 of the New York Statute set out in 3 Schneider, Workmen's Compensation Statutes, p. 2556. New York is in line with courts throughout the Country in holding that a foreman's knowledge of an accident or injury is the knowledge of the employer, so as to dispense with the necessity of giving a written notice. Krakat v. Weatherwax, 251 App.Div. 912, 297 N.Y.S. 215; Matter of Hughes v. St. Patrick's Cathedral, 245 N.Y. 201, 203, 156 N.E. 665; In Matter of Finch v. Buffalo Envelope Co., 218 App.Div. 31, 35, 217 N.Y.S. 744, 747, it was said:

"If the accident is promptly described to him or his superintendent by the injured employee, or by some one who knew the facts, the employer has knowledge of the accident within the meaning of the statute."

In 2 Larson's Workmen's Compensation Law, Sec. 78.31(b) the rule is thus stated:

"Generally, in order that the knowledge be imputed to the employer, the person receiving it must be in some supervisory or representative capacity, such as foreman, physician or nurse; knowledge of a mere co-employee is not sufficient. But any degree of authority which places a man in charge of even a small group of workers is enough to confer this representative status."

Let me again quote the pertinent provision of 33 U.S.C.A. § 912(d):

"Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given * * *."

It is sufficient if *either* the employer *or* his agent in charge had knowledge of the injury. With deference, it seems to me that the effect of the majority decision is to confront us with a dilemma either to strike the first alternative, or to require that the knowledge by the employer be gained first hand as an eye witness. The second horn is no more admissible than the first. Employers of longshoremen, I believe, are usually firms or corporations of considerable size. The only way in most cases that such employers can have knowledge of an injury is through their agents. That is recognized by another section of this same Act, 33 U.S.C.A. § 907, permitting the employee to recover for medical treatment or services when "the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same". The present claimant is in the anomalous position, according to the majority, that there was sufficient knowledge of his injury to render his employer liable for his medical expenses, but not sufficient knowledge for him to recover compensation. I do not think that Congress in an act intended to compensate longshoremen, day laborers, intended any such fine spun technical distinction. I submit that when knowledge is brought home to the foreman who is under a duty to report the injury, that is knowledge of the employer.

1. See also Employers' Liability Assurance Corp. v. Monahan, 1 Cir., 91 F.2d 130, 133; Spencer-Kellogg & Sons v. Willard, 3 Cir., 190 F.2d 830, 832.

Finally the section empowers the deputy commissioner to excuse the failure to give notice "on the ground that for some satisfactory reason such notice could not be given", 33 U.S.C.A. § 912(d[2]), and the deputy commissioner has undertaken to exercise that power. The reasons which the deputy commissioner considered satisfactory are set out in footnote 2 of the majority opinion. If those reasons, considered together as a whole, are viewed from the employee's standpoint, it seems to me that they are adequate and sufficient, indeed compelling reasons why the thirty day notice could not be given. The power vested by Congress in the deputy commissioner to excuse timeliness of notice is in extremely broad terms. Bethlehem Steel Co. v. Parker, 4 Cir., 163 F.2d 334. In my opinion, the deputy commissioner did not abuse the discretion with which he was vested.

For each of the reasons stated, I respectfully dissent.