**In the Matter of FREEDOMLAND, INC.,
Bankrupt.**

**No. 64 B 727.**

United States District Court,
S. D. New York.

Feb. 29, 1972.

Whitney North Seymour, Jr., U. S. Atty., by Susan Freiman, Asst. U. S. Atty., New York City, for the United States.

J. Lee Rankin, Corp. Counsel, New York City (Raymond Herzog, Asst. Corp. Counsel, of counsel), for the City of New York.

Howard Karasik, New York City, for trustee William Otte.

David Shandalow, New York City, for Bankruptcy Lawyers Bar Assn., amicus curiae.

MOTLEY, District Judge.

*Opinion On Petition To Review*

Freedomland, Inc. filed a petition for an arrangement under Chapter 11 of the Bankruptcy Act on September 15, 1964. The arrangement proceeding

failed and on August 30, 1965 the debtor was adjudicated a bankrupt. Thereafter, on November 7, 1969 the trustee, William Otte, moved before the referee for an order authorizing him to pay 413 priority wage claimants without withholding therefrom United States, New York State, or New York City income taxes, federal social security taxes, or any other payroll taxes. This relief was granted.

The Bankruptcy Act, Section 64(a), 11 U.S.C. § 104, establishes five categories of claims, in descending order, which are entitled to payment before the general creditors of the bankrupt are paid. The payment of claims for wages earned within the three month period preceding bankruptcy, in amounts not exceeding $600, falls within the second category of priorities. Claims for taxes which "became legally due and owing" by the bankrupt to any governmental body are entitled to a fourth priority.

The trustee was also granted an order specifically declaring that he was not required to: 1) pay to any governmental body any amounts whatsoever in connection with such wage claim distributions; 2) prepare and distribute to the wage claimants employee wage and tax statements and file copies thereof with tax authorities; 3) prepare and file with tax authorities employer wage and tax withholding statements; 4) pay any penalties for failure to withhold and pay or file returns.

The United States, the State of New York, and the City of New York had been given notice of the trustee's application for such a declaration and order, although none had filed a proof of claim for income taxes due on these wages.[1]

The 413 wage claimants had filed their proofs of claim within the six month period following the initiation of bankruptcy proceedings on September 15, 1964 as provided by the Bankruptcy Act. 11 U.S.C. § 93. The total of these wages ($80,000) had been scheduled by the bankrupt upon the filing of his September 14, 1965 petition for an arrangement.

The State of New York failed to respond. The City of New York responded claiming that the trustee is required to withhold from any wage claims paid by him New York City income taxes and to report and pay same to the City, although the New York City income tax law was not in existence in 1964—the time when the wages were earned by the employees. The United States responded claiming that the trustee is liable to: 1) withhold income and social security taxes;[2] 2) pay such taxes to the United States;[3] 3) file the necessary returns (forms W–2 and 941);[4] 4) furnish each employee with form W–2;[5] and 5) pay any penalty assessed for failure to withhold, pay and file the returns.[6]

Succinctly stated, the trustee's position in support of his application was as follows:

1) Since 413 priority wage claims have been filed in this proceeding, none of which exceeds $600.00, compliance with federal, state and city tax provisions would be onerous because of the administrative, accounting, and legal costs involved, and the unavailability of relevant information. Public policy, administrative convenience, the scheme of the Bankruptcy Act, and the policy underpinning withholding taxes dictate that the trustee in bankruptcy not be required to withhold taxes and file returns

---

1. The United States had filed a claim, Claim No. 441, on February 9, 1965 seeking payment of $82,565.14 for federal income and social security taxes due on those wages actually paid during the third quarter of 1964. The 413 claims here relate to the unpaid wages during this period. This was the quarter immediately preceding any bankruptcy proceeding. The City of New York had filed claims

for other city taxes such as amusement taxes.

2. 26 U.S.C. §§ 3402(a), 3102(a).

3. 26 U.S.C. §§ 3402(d), 3102(b), 3403, 6672, 7201.

4. 26 U.S.C. §§ 6011(a), 6041(a), 7203.

5. 26 U.S.C. §§ 6051(a), 7204.

6. 26 U.S.C. § 6674.

in connection with payments to wage claimants.

2) Making an automatic 25% federal tax deduction (which is the present practice in this District) and a 1% city deduction, in lieu of making an exact calculation of the taxes due from each employee pursuant to progressive tax tables and currently claimed exemptions would constitute a substantial tax over-payment for each employee and therefore would be unconstitutional.

3) A class 2 priority wage claim payment made pursuant to the Bankruptcy Act, § 64a(2), does not constitute wages for the purposes of the withholding and reporting provisions of the Internal Revenue Code;

4) New York City is not entitled to have income taxes for its benefit withheld since, if the wages had actually been paid when due, nothing would have been due the City.

In response to the trustee's claims the United States took the following positions:

1) The bankruptcy court is without power to consider the trustee's application on the ground that a declaratory judgment and injunction with respect to taxes is specifically prohibited. The trustee's remedy is to pay the tax for 1 wage claimant and sue for a refund. Under the doctrine of primary jurisdiction the bankruptcy court should at least refrain from acting until the Internal Revenue Service, the administrative agency to which has been given the authority to interpret and apply the statute, has acted.

2) Assuming the court does have jurisdiction, the Internal Revenue Code requires the trustee to withhold, report and pay income and social security taxes.

3) The 25% flat rate rule prevailing in this District is reasonable in view of the fact that, as the trustee argues, it may often be difficult to determine the correct rate for each employee.

From the adverse decision and order of the referee, the United States and the City of New York filed the instant petition for review.

■ The referee ruled that the bankruptcy court had jurisdiction of the application made by the trustee for instructions with respect to the proposed distribution to wage claimants, and that the Government's contention with regard to lack of jurisdiction was without merit. This court agrees. The bankruptcy court clearly had jurisdiction to adjudicate the tax claims now made by petitioners in response to the trustee's application for an order. The United States and the City both claim that the taxes in issue are costs and expenses of administration and are therefore entitled to a first priority under § 64(a) of the Bankruptcy Act. 11 U.S.C. § 11a(2) and (2A). See United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) and Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), and cases cited *infra* where the bankruptcy court's jurisdiction over similar claims was apparently unchallenged.

The gist of the controversy, as the referee saw it, is whether a trustee in bankruptcy is an "employer" who is paying "wages" when he makes a distribution to wage claimants who are entitled to priority in distribution of estate assets by virtue of the Bankruptcy Act, so that as such "employer" the trustee is required to comply with the applicable withholding and reporting provisions of federal, state, and city tax laws.

The referee viewed this question as requiring a decision with respect to "which of two clearly desirable, but countervailing objectives is to be preferred, viz., the collection of taxes or the efficient administration of the estates in bankruptcy."[7] Viewing the issue in this fashion, the referee preferred the Bankruptcy Act on the ground that "compliance with withholding and reporting requirements of tax authorities

---

7. Referee's Opinion, pp. 7–8.

is utterly inconsistent with the spirit and letter of the Bankruptcy Act." [8] He found that compliance with taxing requirements imposes a further burden on the administration of bankrupt estates which is entirely inconsistent with the objective of efficient, expeditious, economic administration of bankrupt estates.[9] He accordingly held "that a trustee in bankruptcy is not an employer who pays wages when he distributes dividends on account of wage claims whether priority or general." [10]

■ In so holding, the referee expressly rejected the holding to the contrary in the twenty-five year old precedent, United States v. Fogarty, 164 F.2d 26 (8th Cir. 1947), followed in United States v. Curtis, 178 F.2d 268 (6th Cir. 1949) cert. den., 339 U.S. 965, 70 S.Ct. 1001, 94 L.Ed. 1374 (1950); In re Daigle, 111 F.Supp. 109 (D.C.Me.1953); Lines v. State of California, 242 F.2d 201 (9th Cir. 1957) cert. den., 355 U.S. 857, 78 S.Ct. 86, 2 L.Ed.2d 64; In re Connecticut Motor Lines, Inc., 336 F.2d 96 (3rd Cir. 1964). In the *Fogarty* Case the Eighth Circuit ruled that the payment of wage claims are "wages" within the meaning of applicable federal tax provisions and that the trustee as the person in "control of the payment" of such wages has the duty under the Internal Revenue Code to withhold and pay income and social security taxes thereon. And it appears that no court has yet ruled contrary to the *Fogarty* court on the issue of the duty and liability of the trustee to withhold and pay such taxes. The *Fogarty* court viewed the need to protect the future social security benefits of wage earners, which are based solely on wages earned, as of paramount importance in the distribution of wage claims. The able referee, correctly, was of the view that, since this precise question of the liability of a trustee in bankruptcy to withhold and pay has not been passed upon by the Court of Appeals for this Circuit (or the United States Su-

preme Court), he was free to hold to the contrary.

■ In rejecting the ruling in the *Fogarty* case, the referee concluded that the "basic vice of *Fogarty* was its consideration of the problem before it merely as a tax case without giving due regard to the consequences to orderly, efficient, economic bankruptcy administration which necessarily ensue from that ruling."[11] In deciding not to follow the Eighth Circuit, the referee relied completely on the criticism of the *Fogarty* case made by another referee, Russell L. Hiller of Pennsylvania, in a paper entitled "The Folly of the Fogarty Case". The critique is attached to the referee's opinion. The Hiller paper was read at the Annual Conference of the National Association of Referees in Bankruptcy in Indianapolis in October 1956, about a decade after *Fogarty*. Referee Hiller stated at the time: "In practice, as any referee knows, the application of the *Fogarty* rule is sheer nonsense." Referee Ryan agreed. However, other than the one example given by Referee Hiller in his paper, there was no evidence in the record before Referee Ryan to support his conclusion.

Referee Hiller had cited a case before him in which it cost an estate $600 to have the bankrupt's former comptroller, who was familiar with the payroll, calculate the taxes and prepare a schedule of net payments due each wage claimant. In that case the gross payment to the United States for withholding taxes was $1,611.41 and $1,761.72 for employment taxes. Since the amount of taxes due in that case was small compared to the cost, Referee Hiller concluded the *cost* of compliance with tax provisions to a bankrupt estate is unjustified. Despite the *Fogarty* decision and Referee Hiller's criticism, however, the Congress has not seen fit to relieve the trustee of whatever burden (whether financial or otherwise) compliance with tax provisions may impose on bankrupt estates.

---

8. *Id.* p. 12.

9. *Id.* p. 10.

10. *Id.* p. 12.

11. *Id.* p. 10.

This court, uncertain as to what burdens are in fact imposed, received further evidence with respect to the administrative burden and costs which would be imposed upon the trustee here in meeting federal and city taxing requirements.[12] The court felt that such further evidence was necessary not only in view of the fact that there was no evidence before Referee Ryan (other than the Hiller example) to support the referee's conclusion but apparently little in his experience also as a referee in this District to sustain the conclusion. Referee Ryan in his opinion said:

"In practice, except in rare cases, no trustee in bankruptcy complies with state and city withholding and reporting requirements in the Southern District of New York at the present time. Again, except in rare instances, trustees in bankruptcy do not attempt to comply with federal reporting requirements. In effecting distribution to wage claimants, 25% of the gross wage claims being paid is deducted and transmitted by one check to the Director of Internal Revenue without attempting to allocate the proportion of such 'withholding tax' to the various wage claimants for appropriate credit. The origin of this practice was not explained in the instant proceedings. The record was barren of any evidence of what is the practice in other districts."[13]

The referee gave no reason for rejecting the 25% rule. In operation, the 25% rule covered both the income tax due from a wage claimant on the wage claim distribution and the claimant's social security tax contribution. For example: the wage claimant's present social security tax contribution rate is 5.2.%. Under the 25% rule, 5.2% would be credited to the claimant's social security account and 19.8% would be credited toward his income tax for the year.

Further evidence received by the court on behalf of the United States shows that the trustee would be required to file what an employer is now required to file each quarter. This is a return known as form 941 on which the employer reports 1) total wages subject to withholding, 2) total amount of income tax withheld, 3) total of wages subject to social security taxes, 4) total security taxes, 5) each employee's social security number, 6) name of each employee, and 7) total of each employee's taxable social security wages. (Government's Exh. B). The importance of this form is that it advises the Government of social security credits earned by an employee. The information on this form is sent to the Social Security Administration's main office in Baltimore, Maryland.

The employer is also required at the end of the year to file with the taxing authorities a form W-3 indicating the withheld income taxes for each quarter. In this case the trustee would file this form for the quarter in which the wage dividends are paid.

An employer is also required at the end of each year to prepare and file for each employee an employee's wage and tax statement known as form W-2 and to give this form with required copies to the employee. The employee is required to attach same from each employer to his income tax return for the year in which wage payments are received. This form is familiar to every wage or salary earner. It requires the employer to give thereon the following information as to an employee: a) federal income tax withheld; b) wages paid subject to withholding in the year in question and any other compensation; c) state and city income tax withheld;

---

12. General Order 47. In Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) the majority ruled that compliance by the debtor in possession with tax provisions requiring the filing of a return with respect to the income and social security taxes due there was not burdensome (at p. 695, 86 S.Ct. 1674). The minority urged that the contrary may be true (at p. 700, 86 S.Ct. 1674).

13. Referee's Opinion, p. 11.

d) social security tax withheld; e) total social security wages paid in the year in question; f) marital status of the employee; g) employee's social security number.

The Government also adduced evidence from which this court finds that the foregoing forms can be and usually are filled out by a payroll clerk, bookkeeper, or other clerical employee of the employer. The court also finds that, assuming the availability of an employer's payroll records showing each wage claimant's social security number, the preparation of such forms by employing the 25% rule would not be unduly time consuming or costly for the trustee's accountant to prepare in connection with verifying each wage claim before presentation to the referee for payment approval. The trustee's accountant testified that these forms would be prepared by a junior accountant in his office.

The trustee's accountant also testified that the calculation of the proper taxes and the preparation of the required forms would be difficult because the trustee must first ascertain the present number of exemptions to which an employee may be entitled and his present annual income. The trustee's accountant further testified that compliance with tax provisions is expensive and burdensome because the trustee does not have the staff to make the required calculations or prepare the required forms.

The trustee, however, failed to prove that services of an accountant as opposed to a clerk are required either for making the necessary 25% tax calculations or for preparing the required forms. Further, the trustee failed to prove that the employer's payroll records were not available for the purpose of securing therefrom the social security numbers of the 413 wage claimants. Schedule A–1 attached to the bankrupt's petition for an arrangement clearly indicates that its payroll records for the 413 wage claimants are available. Proper social security numbers are necessary not only for income tax purposes but for the proper crediting of the employee's social security account. The evidence showed that in the event a form 941 is filed without social security numbers and the employer is unable to furnish them, a search is made for the employees by the district office of IRS in which the employees reside.

In response to the trustee's claim that it would be essential to know a wage claimant's presently claimed exemptions in order to compute the tax, the Government's evidence established that the 413 wage claimants are to be treated as persons with a second job. This means that if exact calculations are desired in lieu of the 25% rule, these income tax calculations are to be made without reference to exemptions or marital status. 26 U.S.C. § 3402(m) (3) (B). The evidence was that a person with more than one job would claim exemptions only with the prime employer so that there would not be under-withholding of taxes at the end of the year. He would file a certificate claiming zero exemption with the second employer.

Moreover, the Government contends, and the trustee does not deny, that exact income tax calculations need not be made under present IRS policy. The IRS has long since accepted, as the referee noted, the single rate deduction of 25% to cover both income and social security taxes for each employee. If too much income or social security taxes are by this method withheld from an employee, he is, of course, entitled to claim a refund for overpayment on his income tax return for the year when he receives his wage claim dividend. In order to secure these refunds, it is necessary for the employee to have a form W–2 showing such withheld income and social security taxes.

In the past whenever a trustee in bankruptcy sent to the IRS a check representing 25% of the gross wage claims paid by him, the IRS prepared the forms. (Tr. p. 80). These forms were prepared by the Special Procedures Section which files the Government's proofs of claim in bankruptcy and handles all bankruptcy litigation. The Gov-

ernment now takes the position that these forms should be prepared by the trustees in bankruptcy.

With respect to the 25% flat rate rule the trustee simply argued that application of such rule would be unfair to the wage claimants because most claimants would have too much tax withheld and would then have the burden of applying for a refund.

Evidence received on behalf of the City of New York revealed that the trustee would be required to file with it two simple reporting forms. (City's Exh. 1 and 2). The only information sought by the City's forms relates to income taxes withheld and amounts paid to the City during the year.

As a result of the further evidence adduced, this court finds that compliance with federal and city tax provisions by utilizing the existing 25% rule is not unduly burdensome or expensive. Compliance with such requirements adds only slightly to the trustee's inescapable task and cost of verifying each claim before payment. Consequently, failure of a trustee to comply with tax provisions cannot be predicated on the ground that compliance is so contrary to the objective of efficient expeditious and economic administration of bankruptcy that it ought not be required of trustees.

■ We now come to the legal issues. The first question is whether taxes are required to be withheld by the trustee upon the payment of wage claims which accrued prior to any bankruptcy proceeding. In United States v. Fogarty, *supra,* the Eighth Circuit, in a well reasoned persuasive opinion with which this court agrees, ruled that the payment of such wage claims is the payment of wages within the meaning of the Internal Revenue Code and that the trustee, as the person controlling the payment of such wages, is required by that Code to withhold federal income and social security taxes. 26 U.S.C. §§ 3121(a), (b), 3401 (d). Although this Circuit has not passed directly on this question in a bankruptcy case, in Educational Fund of Electrical Industry v. United States, 426

F.2d 1053 (2d Cir. 1970), it agreed with the latter holding of the Eighth Circuit in another context and held that the person having control of the payment of the wages in lieu of an employer is obligated to withhold federal income taxes.

The second question is whether the trustee is bound to prepare and file form 941 and prepare, file and distribute to each wage claimant form W–2. In Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Court held that a superceding trustee in bankruptcy is liable for penalties assessed by federal taxing authorities for failure to file tax returns on income and social security taxes withheld but not paid by the debtor in possession during an arrangement proceeding under Chapter XI. [It expressly left open the question whether a trustee in bankruptcy must file returns for the bankrupt for taxes "incurred" before bankruptcy. (at p. 692 *fn.* 27), 86 S.Ct. 1674.] There the Court said: "It is conceded that the trustee, in his status as representative of the bankrupt estate and successor in interest to the debtor in possession, is liable for the principal of the taxes incurred by the debtor in possession, to the extent of the priority enjoyed by the taxes under § 64a(1) of the Bankruptcy Act. Once that liability is established, there can be no question that, under § 6011(a) of the Internal Revenue Code, the trustee was under an obligation to file returns for these taxes, even though the taxes themselves were incurred by the debtor in possession during the pendency of the arrangement proceeding." (at pp. 692–693, 86 S.Ct. at p. 1684). Following that reasoning of Nicholas v. United States, *supra,* and the reasoning of United States v. Fogarty, *supra,* that the trustee steps into the shoes of the bankrupt as employer for the purposes of paying pre-bankruptcy wages and withholding income and social security taxes thereon, this court holds that the trustee has the duty to file forms 941 and W–2.

■ The third and most difficult question necessary for decision on this

review is whether the payment of the withheld taxes is entitled to a first priority under Section 64(a) (1) of the Bankruptcy Act as costs and expenses of administration as the Government claims. In support of its claim the Government relies upon the *Fogarty* case. There the Eighth Circuit held that the withheld taxes should be allowed and classified as an expense of administration. In reaching its conclusion, the court was impressed by the fact that the taxes were not payable at the time the petition was filed by the bankrupt since the wages had not been paid. It was persuaded that the taxes only accrued, in the language of the social security statute,[14] "as and when" the wages are paid, that is, on the actual payment there of the wage claims. The Court said, and this seemed controlling, that the wage payments were made "during the administration of the estate pursuant to the orders of the bankruptcy court." (164 F.2d at p. 33). In short, the taxes accrued after bankruptcy commenced and were therefore entitled to a first priority as an expense of administration.

The Sixth Circuit in United States v. Curtis, *supra*, although it agreed with the Eighth Circuit that the trustee must withhold the taxes on the payment of wages earned prior to bankruptcy, did not reach the question whether the payment of the taxes is entitled to a first priority. It expressly did not base its decision on the Eighth Circuit's view of this question.

The Seventh Circuit in In re John Horne Co., 220 F.2d 33 (1955), noted that it was not "impressed" with the reasoning of the Eighth Circuit in granting a first priority to the payment of taxes on unpaid pre-bankruptcy wages but found no necessity to follow or reject that holding. The facts before that court were distinguishable. In the Seventh Circuit case the wages had been paid before bankruptcy. The taxes withheld thereon were unpaid. The court consequently had no problem in finding

that those taxes were "legally due and owing" to the United States at the time of the filing of the bankruptcy claim and as such were entitled only to a fourth priority status.

In Pomper v. United States, 196 F.2d 211 (2d Cir. 1952) this Circuit dealt with the annual federal unemployment tax on employers which was a 3% tax on wages paid during the year. In that case the tax became due for the year in question after commencement of a Chapter XI proceeding. Although the tax was not payable until after the Chapter XI proceeding had commenced, the court held the tax divisible. It ruled that the tax was entitled to a first priority with respect to payment only as to those wages paid by the debtor in possession. As to those wages actually paid before bankruptcy, the court held that payment of the tax was entitled to only a fourth priority, even though the bankrupt's estate was insufficient to pay fourth priority claims. In assigning a fourth priority to that portion of the tax relating to pre-bankruptcy wages, the court pointed out that the amount of the tax for any specific period is computable by simple arithmetic based on wages paid to that point. Then the court said: "The mere fact that the tax is not due until the year's end does not detract from the fact that it is incurred in a readily ascertainable amount as the wages are paid." (at p. 213). In short, although the tax was not payable to the Government until the end of a given year, the tax on wages paid before the end of the year were legally due and owing the United States because readily ascertainable.

The Ninth Circuit reached the same conclusion as the Eighth Circuit in Lines v. State of California, *supra*, with respect to payment by the trustee of that state's unemployment tax. The tax there had been imposed upon employers and was based upon the payment of wages earned within three months prior to bankruptcy but paid during bankruptcy.

14. 26 U.S.C. § 3102.

The Third Circuit, however, parted company with the Eighth Circuit on the priority of payment issue in In re Connecticut Motor Lines, Inc., *supra,* and held that the withheld taxes are entitled only to a fourth priority. It had embraced, however, the Eighth Circuit's holding with respect to the duty and liability of the trustee to withhold taxes upon the payment of pre-bankruptcy wages. (336 F.2d at p. 99, fn. 9).

This court is persuaded, as the Third Circuit was, that employee income and social security taxes withheld upon the payment of priority wage claims are not convincingly characterized as costs and expenses of administration but are more properly characterized as taxes "legally due and owing" the United States by the bankrupt, when attempting to fit them within the Section 64(a) scheme of priorities. These are neither taxes on activities involved in further developing or protecting the bankrupt's estate nor taxes imposed on the mere distribution of the wages, the chief characteristics of taxes denominated costs and expenses of administration.[15] These are taxes on wages for services performed for the bankrupt before the bankruptcy. They are not taxes imposed on any post bankruptcy activity. As the Third Circuit said, if the trustee can be cast in the role of bankrupt-employer for the purpose of the taxes attaching in the first place, as the Eighth Circuit ruled, it is difficult to see why he cannot also be bankrupt-employer for the purpose of determining by whom the taxes are owed for Section 64(a) purposes.

Section 64(a) (4) was amended after the Third Circuit case in 1966 to read that fourth priority shall be given to "taxes which *became* legally due and owing by the bankrupt" to any governmental body. [Italicized portion added by amendment]. The Congress did not undertake to define the term "legally due and owing".[16] The question of what

taxes "became legally due and owing" by the bankrupt was thus left to the courts. In Matter of International Match Corp., 79 F.2d 203 (2d Cir. 1935), cert. den. sub nom. Delaware v. Irving Trust Co., 296 U.S. 652, 56 S.Ct. 368, 80 L.Ed. 464, this Circuit had ruled that before a tax could be found to be legally due and owing by the bankrupt before bankruptcy enough must have been known about the basis of the tax to make the tax computable or "knowable" before bankruptcy, although not collectible until after adjudication. "The time of the accrual of the obligation to pay rather than the time when the obligation is to be discharged by payment is the controlling feature." (at p. 205).

The taxes in question are a part of the wages due each employee. The obligation to pay those wages plainly accrued before bankruptcy. The fact that the wages are now to be paid after adjudication is, therefore, not controlling in determining when the tax obligation accrued. The tax obligation here accrued prior to bankruptcy along with the obligation to pay the wages earned prior to bankruptcy, although the taxes are not payable until the wages are paid.

The Third Circuit in dealing with this issue first noted that, "It is well settled that the term 'legally due and owing' does not mean 'payable.' " (336 F.2d at p. 104). It then resolved the tax uncertainty question by ruling that by reference to the annual wage of each employee, as disclosed by the bankrupt's records, a maximum tax figure is available for the purposes of provability under Section 64(a) (4).

This court also concurs with the Third Circuit that there has been a concerted legislative effort to reduce the significance of tax claims relative to other priorities under the Bankruptcy Act which justifies a fourth priority here. This view of the legislative trend was recently reaffirmed by the Supreme

---

15. 40 N.Y.U.Law Rev. 360 (1965); 56 Mich.Law Rev. 631 (1958).

16. U.S.Code Congressional and Administrative News, 1966, p. 2468. In re Kopf, 299 F.Supp. 182 (E.D.N.Y.1969).

Court in United States v. Randall, *supra*. In the *Randall* case the bankrupt corporation was allowed to continue in business as debtor in possession. The order thus appointing the corporation required it to open three separate bank accounts for its general, payroll, and tax indebtedness and to make appropriate disbursements from those accounts. Withheld taxes were to be paid into the tax indebtedness account, but the debtor in possession failed to comply with the court's order. Income taxes from wage payments had been withheld by the corporation, but they had not been deposited in the special tax account or paid to the Government. When the corporation was later adjudicated a bankrupt, the Government, which had previously filed a proof of claim in the Chapter XI proceeding for the payment of these taxes, moved in the bankruptcy court for an order allowing payment of these withheld taxes prior to payment of the costs and expenses of administration of the bankruptcy proceeding. The Government's theory was that the withheld taxes constituted a trust in favor of the United States. The referee denied the Government's claim. This denial was affirmed by the District Court and the Court of Appeals for the Seventh Circuit. The United States Supreme Court granted certiorari because of a conflict among the circuits. In affirming the lower courts in *Randall* the Court ruled that the Bankruptcy Act is an overriding statement of federal policy on the question of priorities. It then quoted from that part of Section 64(a)(1) of the Act which gives priority to the costs and expenses of administration of a superceding bankruptcy over the costs and expenses of administration of the superceded Chapter XI proceeding. The Court there pointed out that until 1926 taxes were placed ahead of costs and expenses of administration. However, in that year Section 64 was amended to place costs and expenses in the first priority and taxes legally due and owing from the bankrupt in the fourth priority. And in 1952 the Section was again

amended to give priority to administrative costs and expenses of a superceding bankruptcy over costs and expenses of a Chapter XI proceeding. The Court said: "We have then a progressive legislative development that (1) marks a decline in the grant of a tax preference to the United States and (2) marks an ascending priority for costs and expenses of administration."

Here the Government has filed a proof of claim for the taxes due on those wages actually paid in the three month period preceding bankruptcy (Claim 441). It admits that these taxes are entitled to only a fourth priority as taxes which became legally due and owing by the bankrupt before bankruptcy. If the taxes due on the wages actually paid are entitled to only a fourth priority, why should the taxes on wages earned but simply not paid during that period be entitled to a higher priority? To assign a first priority to the later group of taxes would make those taxes payable ahead of the wages, themselves, which are entitled to only a second priority.

The fourth question is whether the Government's claim here is barred by failure to file a proof of claim. The Third Circuit said: "The mere fact of payment after the filing does not, for bankruptcy purposes, lessen the ability of the Government to file a proof of claim. Because a maximum figure is ascertainable, though subject to reduction, an adequate proof of claim can be filed." (at p. 106). The Third Circuit thereupon barred the Government's claim on the ground that it had failed to file a proof of claim, in apparent reliance upon the *Fogarty* case. This court agrees with the Third Circuit that the amount of the taxes due here are readily ascertainable but by a different method. It disagrees with the Third Circuit that the Government's claim is barred by its failure to file a proof of claim. With all due respect, this court finds that holding by the Third Circuit incongruous.

Here the total of the unpaid wages was scheduled by the bankrupt. The

Chapter XI petition filed herein on September 15, 1964 reads: "There are approximately $80,000 in wages due employees as set forth in the debtor's payroll records for the four-month period immediately preceding the filing." (Schedule A–1). Thereafter, and within the six months allowed for the filing of such claims (11 U.S.C. § 93), 413 wage claims were filed against the $80,000 figure. These 413 claims have been checked by the trustee (in some instances they were contested) and approved by the referee for payment. The referee's order approving payment of these claims without withholding therefrom employee social security and income taxes is the order now before this court for review. When the wage claimants filed their proofs of claim, each such claim was for the full amount due that employee. It was not a claim for the full amount less the taxes due thereon. The trustee and the referee thus had before them a claim in each instance which included the Government's claim. By the simple expedient of applying the long standing 25% rule to each claim, the amount of the taxes due is readily ascertainable. If the amount of wages due each employee is known and can therefore be made the basis of a proof of claim, it is difficult to see why the income and social security taxes due thereon are not proved by the same piece of paper.[17]

The purpose of requiring a proof of claim before any payment can be made from the estate of a bankrupt is obvious. 11 U.S.C. § 93. The estate must be protected against incorrect or fraudulent claims. When an employee files his proof of claim for the total of his pre-bankruptcy wages, the requirement of proof of claim before the Government can be paid its taxes has plainly been met. To require the Government to file another proof of claim with respect to those same wages does not appear to have been mandated by the Congress. The Government is entitled to taxes only on those wage claims actually filed, proved and paid. This is why there is uncertainty about the amount of taxes due. It is not an uncertainty arising from an inability to compute or know the tax on the day the bankruptcy petition is filed. It is an uncertainty arising from an inability to know who will file a proof of claim. Once a proof of claim is filed by a wage earner, all uncertainty ends And the requirement that the Government file another proof of claim is simply a hypertechnical construction of the proof of claim requirement. In the case of taxes due on wages *actually paid* in the pre-bankruptcy period, the Government obviously must file a proof of claim since no proofs of claim would be filed by the wage earners involved. Here, however, the situation is different. Proof of claim must be filed by each wage earner before the Government can recover its taxes. This court therefore holds that a second proof of claim by the Government is not required.

■ The final question is whether New York City is entitled to have a 1% income tax withheld from each wage distribution for its benefit. New York City did not enact any income tax law until 1966. Manifestly there were no taxes that could be said to be legally due and owing to the City of New York by the bankrupt in any sense in September 1964 when the Chapter XI proceeding was filed. Since the bankrupt owed no "knowable" or computable tax to the City in 1964, the City has no claim enforceable in bankruptcy. Matter of International Match Corp., *supra*.

For the reasons set forth above, the decision and order of the referee are reversed and the trustee should be directed by the referee to: 1) withhold each employee's federal income and social security tax contribution from each wage claim distribution; 2) furnish each employee with the required W–2 form; 3) file the required form 941 and W–3; and 4) pay the withheld taxes to the United States.

Submit order on five days notice.

---

17. 40 N.Y.U.Law Rev. 360, 364 (1965).